## THE PINE FOREST.

### (District Court, D. Rhode Island. January 20, 1903.)

1. SALVAGE—RAISING SUNKEN VESSEL—SERVICES RENDERED BY OWNER OF VESSEL IN FAULT.

   A barge, sunk through the fault of a tug, was raised by other vessels owned by the owners of the tug, there being no specific agreement between the parties in respect to payment for the services. Subsequently the tug was libeled for the loss, and the owners by proper proceedings limited their liability to her stipulated value. *Held*, that such limitation did not entitle them to recover for raising the barge as a salvage service, the work having been done in performance of a duty which they owed as owners of the tug to lessen the damage done so far as possible and for their own benefit in reducing the claim for damages, although even as so reduced it exceeded the amount of their liability as limited.

In Admiralty. Suit for salvage services.

Carver & Blodgett, for libelants.

Robert M. Morse and W. M. Richardson, for claimant.

BROWN, District Judge. This libel is for salvage services in raising the barge Pine Forest, which was sunk in Quick's Hole, Vineyard Sound, January 16, 1898. It has been determined by the United States district court of the district of Massachusetts that the Pine Forest was sunk through the fault of the steamtug Triton, owned by the Knickerbocker Steam Towage Company. The Triton herself took no part in raising the barge. By a stipulation it is provided that whatever defense there might be provided this libel were brought by the Knickerbocker Steam Towage Company, the owners of the Triton, the same will be a defense against these libelants. For the purposes of this case, the libelants may be regarded as the owners of the tug Triton, which caused the damage. The present case is, therefore, in substance, a suit by the owners of an offending tug to recover for services rendered by other vessels owned by them and employed by them in raising the barge. It is agreed that the value of the services is the sum of $8,750, with interest. It thus appears that the owners of the offending tug, the Triton, caused the barge an item of $8,750 damage, which damage they have repaired by furnishing $8,750 of services. Under ordinary circumstances one claim would erase the other. The difficulty in the present case arises from the following facts: The barge was sunk January 16, 1898; work in raising her was begun on January 18, and continued to February 27, 1898; a libel against the Triton was filed in the district of Massachusetts on or after March 5, 1898, and in that case the owners limited their liability by stipulation to the sum of $20,000, the agreed value of the Triton.

The libelants contend that, if they are not entitled to recover in this case, they are not entitled to limit their liability to the value of the vessel, but only to the value of the vessel plus such additional sum as they may have found necessary to expend in raising the Pine Forest.

Ordinarily a salvage reward is allowed for a service rendered to marine property by those under no obligation to render it. So far as I am able to see, the fact that owners may limit their liability can have, in this case, no bearing on the question whether they were working as salvors or in their own interest. Whether such a fact might have a bearing under circumstances which showed clearly, before the work of raising was begun, that the final damage was already in excess of the value of the offending vessel, and of the amount of its owner's statutory liability, is a question that we need not determine. It does not appear in this case that, upon the stranding of the barge, the owners of the tug knew that they had already suffered a loss equal to the value of their entire interest in the tug.

The claimant contends that the duty to relieve the barge was not a duty of the tug Triton alone, but a duty of the owners of the Triton. This contention is supported by the language of the circuit court of appeals for the Sixth circuit, in Fleming v. Lay, 48 C. C. A. 748, 109 Fed. 952: "It was the duty of the tug which had stranded the

schooner by its negligence, and through it the duty of the association, to relieve the vessel from the peril in which it had been placed." The association was the owner of a tug which, by negligent navigation, had brought a schooner into peril by stranding, and of other tugs which assisted in relieving the schooner. It was held that the services of the other tugs were rendered to the association, and not to the schooner, and that she was not liable therefor. Under similar circumstances, it would seem just to hold that the assisting vessels were working for their owners, in the discharge of their obligation, rather than that they should be regarded as independent salvors.

The evidence in the present case does not show any specific agreement that the work of raising the barge was to be the performance of an independent salvage service, rather than the performance by the owner with his own vessels of a duty owed to the barge. Upon the whole, it amounts merely to this: that the owner of the tug in fault, with the consent of the owner of the barge, undertook to relieve the barge from her peril. The value of the services was to be determined thereafter, but nothing was said as to ultimate responsibility, or as to the manner of payment, or whether the services should be offset against damages or paid in cash, or to indicate that any question of limited liability was in the mind of either party. The rights in the present case must be determined from the proofs as to the things which were done, rather than from any inference that can be drawn from the indefinite language used by the parties in their communications.

Usually, when a wrongdoer makes a physical repair or replacement of the thing injured, no pecuniary liability for damages arises, except for what is not restored. There is satisfaction to the extent of accepted repair. If the Triton's crew had negligently lost overboard the Pine Forest's anchor, and had then recovered it, they could make compensation for their negligence by restoring it, but they could not also make a claim for salvage. They must bear the labor resulting from their own negligence. So, if the libelants have sunk the barge and raised her and restored her, they make compensation to the extent of the restoration; but the labor in the work of recovering her is for their own benefit, in order that they may restore, and is not salvage service. As a matter of fact, there was, before the libeling of the Triton, a partial physical restoration of the barge, so that the outstanding claim of the barge owners was only for what had not been restored.

I know no reason why the libelants should be permitted to treat the value of the work done in order that they might restore as an outstanding pecuniary liability from which they may partially relieve themselves by proceedings for the limitation of liability. As repair proceeds, it extinguishes the obligation to pay damages. There can be no doubt that, in raising the barge and delivering her to her owners, the libelants were persons who were under a general obligation to relieve the vessel if practicable, and who were also liable to pecuniary loss to the extent of their interest in the tug Triton for any damage already done, and for any additional damage to the barge that might result from leaving her stranded. In raising her,

therefore, they were working for their own interest, and not as salvors. This is so, even if it were subsequently found that their entire pecuniary expenditure or loss would have been less had they abandoned the barge as a total loss. But for the intervention of the owners of the tug, one of the items of damage might have been a sum paid for raising the barge; but, as the owners of the tug themselves floated the barge and then delivered her to her owners, this item of damage was avoided, and was not an outstanding liability when limitation proceedings were begun. In The Benefactor, 103 U. S. 245, 26 L. Ed. 351, it was said: "A limitation proceeding must be regarded as ineffectual as to any specific party, if not undertaken until after such party has obtained satisfaction of his demand."

Libel dismissed.